CERTIFIED MAIL

7015 0640 0000 1720 0755

LAW OFFICES OF
**RICHARD M FOSTER**
5429 CAHUENGA BOULEVARD
NORTH HOLLYWOOD, CA 91601

Michael Davis
CORT Business Services Corporation
3455 W Sunset Rd Ste A
Las Vegas, NV 89118

Mailed From 91601
12/14/2015
032A 006182496S

US POSTAGE
$07.17⁵
First-Class

**SUM-100**

# SUMMONS ON FIRST AMENDED COMPLAINT
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CORT BUSINESS SERVICES CORPORATION, a Delaware corporation; DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ELEVEN23 MARKETING, LLC, a California limited liability company; ARMEN GHARABEGIAN, an individual,

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 11 2015

Sherri R. Carter, Executive Officer/Clerk
By_____S. Alarcon_____, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California
600 E. Broadway
Glendale, CA 91206

**CASE NUMBER:**
*(Número del Caso):*
EC064472

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Richard M. Foster          5429 Cahuenga Boulevard; North Hollywood, CA 91601
Law Offices of Richard M. Foster    (818) 508-1500

**DATE:** DEC 1 1 2015    SHERRI R. CARTER   Clerk, by   S. Alarcon   , Deputy
*(Fecha)*               *(Secretario)*              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Richard M. Foster (SBN 93909)
richard@rmflaw.com
**LAW OFFICES OF RICHARD M. FOSTER**
5429 Cahuenga Boulevard
North Hollywood, CA 91601
Telephone:   (818) 508-1500
Facsimile:    (818) 508-1529

Attorneys for Plaintiffs
Eleven23 Marketing, LLC and Armen Gharabegian

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 11 2015

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
S. Alarcon

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ELEVEN23 MARKETING, LLC, a California limited liability company; and ARMEN GHARABEGIAN, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CORT BUSINESS SERVICES CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: EC064472<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>(1) **DECLARATORY RELIEF;**<br>(2) **BREACH OF CONTRACT;**<br>(3) **DECLARATORY RELIEF;**<br>(4) **TRADEMARK INFRINGEMENT;**<br>(5) **TRADEMARK DILUTION; AND**<br>(6) **UNFAIR COMPETITION AND FALSE ADVERTISING UNDER CAL. BUS. & PROF. CODE §§ 17200 and 17500,** *ET SEQ*<br><br>Assigned to Hon. John P. Doyle |

Plaintiffs Eleven23 Marketing, LLC and Armen Gharabegian (collectively, "Plaintiffs") allege as follows:

## THE PARTIES

1. Plaintiff Eleven23 Marketing, LLC ("Eleven23") is a corporation existing under the laws of the State of California, with its principal place of business in Los Angeles County, California.

2. Plaintiff Armen Gharabegian ("Gharabegian") is an individual residing in Los Angeles County, California.

///

///

1
**FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN**

3. Plaintiffs allege upon information and belief that Defendant CORT Business Services Corporation ("CORT") is corporation organized and existing under the law of the State of Delaware, with its principal place of business in the State of Nevada.

4. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this First Amended Complaint to allege the true names and capacities of such fictitious defendants when they are ascertained. Plaintiffs allege that each of the defendants sued herein as DOES 1 through 100, inclusive, are in some manner responsible, in whole or in part, for the injuries which have been, are being, and will be suffered by Plaintiffs as alleged herein.

5. Plaintiffs allege upon information and belief that each named and fictitious defendant sued herein was the agent, employee, officer, director, partner, principal and/or co-conspirator of every other named and fictitious defendant, and that the acts of each named and fictitious defendant were with the scope of such agency, employment, service, partnership and/or conspiracy in engaging in the acts and/or omissions alleged herein.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Code of Civil Procedure section 410.10 because the alleged conduct has taken place in Los Angeles, County and the amount in controversy, exclusive of interest, costs, and attorneys' fees, exceeds the jurisdictional minimum of this Court.

7. Venue is proper in the Los Angeles County Superior Court pursuant to Code of Civil Procedure section 395(a) in that the obligation or liability alleged herein arose in Los Angeles County, California. Moreover, the agreements between the parties were to be performed in Los Angeles County, California.

## GENERAL ALLEGATIONS

8. Eleven23 provides, among other things, furniture design and manufacturing services.

9. CORT provides, among other things, furniture rental services.

///

## Asset Purchase Agreement

10. On June 29, 2010, CORT and Lounge 22 entered into an Asset Purchase Agreement (the "APA"), whereby CORT purchased certain products and furnishings of Lounge 22.

11. In September 2009, prior to the APA, Lounge 22, LLC ("Lounge 22") had filed a voluntary petition for bankruptcy pursuant to Chapter 11 of Title 11 of the United States Code. CORT was aware of Lounge 22's bankruptcy filing at the time of entering into the APA with Lounge 22.

12. Under the APA, "Seller" refers to Lounge 22 and "Purchaser" refers to CORT.

13. The APA includes the following relevant provisions:

   a. "WHEREAS, 1123 Marketing, LLC ("1123 Marketing") intends to enter into a sale and purchase agreement with Seller pursuant to which Seller will sell, transfer and assign to 1123 Marketing all of Seller's right, title and interest to substantially all of the assets Seller other than the Purchased Assets to be acquired by Purchaser pursuant to this Agreement." (APA at p. 1.)

   b. "WHEREAS, in partial consideration for the purchase of the Purchased Assets by Purchaser, Gharabegian has agreed to enter into the Non-Competition Agreement and 1123 Marketing has agreed to enter into a Master Supply Agreement with Purchaser, both of which are prerequisites to the Closing of the transactions described in this Agreement."

   c. "The consummation of the transactions contemplated hereby shall take place at a closing (the "Closing") to be held at the offices of Lounge 22, LLC, 1805 Flower St., Glendale, California 91201." (APA, § 2.1.)

   d. "The obligations of the Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction or fulfillment at or prior to the Closing of the following conditions, any of which may be waived in whole or in part by the Purchaser in writing: ... a master supply and sales agreement (the "Master Supply Agreement"), duly executed by 1123 Marketing, LLC and Purchaser." (APA, §§ 6.1, 6.1(l).)

   e. "The obligations of the Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction or fulfillment at or prior to the Closing of

3
FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN

the following conditions, any of which may be waived in whole or in party by the Seller in writing: ... the Purchaser shall have delivered a duly executed master supply agreement between 1123 Marketing, LLC and Purchaser." (APA, §§ 6.2, 6.2(l).)

    f.    "This Agreement will be governed by and construed and interpreted in accordance with the Laws of the State of California, without giving effect to any choice of law or conflicts of Law provision or rule that would cause the application of the Laws of a jurisdiction other than California." (APA, § 10.7.)

    g.    "Each party hereto irrevocably consents to the service of any and all process in any action or proceeding arising out of or relating to this Agreement by the delivery of copies of such process to each party in the manner required by Section 10.1." (APA, § 10.7.)

14.    On or around June 2010, Eleven23 and Lounge 22 entered into an asset purchase agreement, whereby Eleven23 acquired certain assets from Lounge 22.

## Master Supply Agreement

15.    On or around August 9, 2010, CORT and Eleven23 entered into a Master Supply Agreement ("MSA"), whereby CORT would purchase certain products from Eleven23.

16.    The MSA includes the following relevant provisions:

    a.    "This term of this Agreement shall commence on the Effective Date and shall continue for a period of five (5) years ("Initial Term"). Thereafter, the Agreement will automatically renew for successive one (1) year terms (each, a "Renewal Term"), unless terminated sooner as described in this Section 1. This Agreement may be terminated by either party in the case of a material or persistent breach by the other party of any one or more of the terms of this Agreement, which is not remedied within thirty (30) days after written notice of the breach by the terminating patty, or if such breach cannot reasonably be cured within such thirty (30) day period, the breaching party has failed to commence such cure within such period and diligently prosecute such cure to completion within a reasonable time thereafter. Should CORT exercise its right to terminate, in accordance with this paragraph, CORT, unless otherwise set forth herein, shall be relieved of any further obligation, financial or otherwise, to Seller beyond the effective date of such termination.

4

FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN

However, CORT shall retain its obligation to accept and pay for any Products ordered by CORT prior to the effective date of termination and delivered by Seller. Product warranties shall survive the expiration or termination of this Agreement in accordance with their terms." (MSA, § 1.)

    b.    "WHEREAS, CORT has entered into that certain Asset Purchase Agreement (the "APA"), dated as of June 29, 2010, for the purchase of certain products and furnishings from Lounge 22, LLC ("L22") in accordance with 11 U.S.C. § 363." (MSA at p. 1.)

    c.    "Seller agrees that, for the Restricted Period (as defined below), Seller shall not, either directly or indirectly, through an affiliated or controlled entity or person, including Ethos Design, LLC ("Ethos"), L22 or any other entity owned or controlled by Armen Gharabegian (collectively, the "Affiliates"), on Seller's own behalf or as a partner, contractor, shareholder, member, consultant, principal, agent, trustee or otherwise (except by ownership of five percent (5%) or less of the outstanding stock of any publicly held corporation) or in any other capacity, own, manage, operate, control, invest, participate or engage in, lend its name to, render services or advice to, or devote any material endeavor or effort to, an entity engaged in the Restricted Business (as defined below) in the Restricted Territory (as defined below). The term "Restricted Territory" shall mean the countries of the United States of America, Canada and the following European countries: United Kingdom, Ireland, France, Germany, Spain, Italy, Switzerland, Austria, Holland, Denmark, Norway, Sweden and Belgium. The term "Restricted Period" shall mean the period commencing on the Effective Date of this Agreement and continuing for a period of five (5) years. The term "Restricted Business" shall mean the following: (i) the rental and leasing, either on a short-term or long-term basis, of Products to any person, company, customer or other entity; (ii) the retail or contract sale or distribution of Furnishings to any company or customer conducting business within the defined industry segments set forth on Exhibit B attached hereto; or unless approved by CORT[;] (iii) the retail or contract sale or distribution of Furnishings to any company or customer who derives at least ten percent (10%) of its gross revenues from renting or leasing Furnishings, either on a short-term or long-term basis, to any person,

company, customer or other entity, unless approved by CORT." (MSA, § 4(a).)

      d.    "CORT agrees to purchase the Products exclusively from Seller, and CORT will not enter into any agreement for the manufacture of the Products by any other supplier or manufacturer." (MSA, § 5(a).)

### Non-Competition and Non-Solicitation Agreement

17.    On or around August 18, 2010, CORT and Gharabegian entered into a Non-Competition and Non-Solicitation Agreement (the "Non-Competition Agreement").

18.    The Non-Competition Agreement provides, in relevant part, as follows.

      a.    "WHEREAS, this Agreement is being entered into pursuant to and as a condition of that certain Asset Purchase Agreement, dated as of June 29, 2010 (the "Asset Purchase Agreement"), by and between Purchaser, Lounge 22, LLC, a California limited liability company ("Seller") and Shareholder [Gharabegian]." (Non-Competition Agreement at p. 1.)

      b.    "WHEREAS, this Agreement is a material inducement to Purchaser to enter into the Asset Purchase Agreement, and Shareholder is agreeable to entering into this Agreement with Purchaser on the terms herein set forth." (Non-Competition Agreement at p. 1.)

      c.    "WHEREAS, the parties recognize that the consideration received by Seller and Shareholder pursuant to the Asset Purchase Agreement is in consideration of and conditioned upon Shareholder not competing with Purchaser in certain territories for a certain period of time in order to protect the assets and goodwill acquired from Seller." (Non-Competition Agreement at p. 1.)

      d.    "Shareholder agrees that, for the Restricted Period (as defined below), Shareholder shall not, either directly or indirectly, through an affiliated or controlled entity or person, including Seller, on his own behalf or as a partner, consultant, proprietor, principal, agent, trustee or otherwise (except by ownership of five percent (5%) or less of the outstanding stock of any publicly held corporation) or in any other capacity, own, manage, operate, control, invest, participate or engage in, lend his name to, render services or advice

6

FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN

to, or devote any material endeavor or effort to, an entity engaged in the Restricted Business (as defined below) in the Restricted Territory (as defined below). The term "Restricted Territory" shall mean the countries of the United States of America, Canada and the following European countries: United Kingdom, Ireland, France, Germany, Spain, Italy, Switzerland, Austria, Holland, Denmark, Norway, Sweden and Belgium. The term "Restricted Period" shall mean the period commencing on the Effective Date of this Agreement and continuing for a period of five (5) years. The term "Restricted Business" shall mean the following: 1.1 the rental and leasing, either on a short-term or long-term basis, of Furnishings to any person, company, customer or other entity; 1.2 the retail or contract sale or distribution of Furnishings to any company or customer conducting business within the defined industry segments set forth on Exhibit A attached hereto; or 1.3 the retail or contract sale or distribution of Furnishings to any company or customer who derives at least ten percent (10%) of its gross revenues from renting or leasing Furnishings, either on a short-term or long-term basis, to any person, company, customer or other entity." (Non-Competition Agreement, § 1.)

    e.    "In the event of any litigation between the parties hereto, relating to this Agreement, the prevailing party shall be entitled to recover attorneys' fees." (Non-Competition Agreement, § 17.)

### Discussions of Possibility of Entering into New Supply Agreement

19.    Knowing that the MSA and Non-Competition Agreement would expire in August 2015, CORT and Eleven23 began discussing the entry of a new master supply agreement in or around late 2014.

20.    On or around June 25, 2015, CORT paid $80,000 (the "Non-Competition Advance") to Gharabegian in advance for engaging in negotiations for a possible new Non-Competition Agreement. It was understood and agreed that, if the parties were unable to agree on a new master supply agreement and non-competition agreement, the Non-Competition Advance would have to be returned to CORT on or before September 30, 2015.

21.     Between the end of 2014 and November 2015, CORT and Eleven23 attempted to negotiate a new master supply agreement. Eventually, the parties were unable to agree upon a new master supply agreement.

22.     Since the parties had not entered into a new master supply agreement and new non-competition agreement, on or around September 24, 2015, the $80,000 Non-Competition Advance was returned to CORT.

23.     On November 6, 2015, Gharabegian sent an e-mail to Damon R. Ross ("Ross"), CORT's Group Vice President of Trade Show & Event Furnishings, indicating that, "Since it is the end of the week and I have not received any emails or the signed contract from CORT that I provided to you on Monday, I assume CORT is not interested and I will plan accordingly. I have waited months for CORT to provide a contract and have been discussing this since beginning of the year. We cannot continue delaying as this is drastically affecting our business."

24.     On November 6, 2015, Ross sent a letter to Gharabegian indicating that "the Master supply agreement dated August 9, 2010 remains in effect."

25.     On November 12, 2015, Gharabegian sent a letter to Ross indicating: "You are incorrect in claiming that the Master Supply Agreement "remains in effect." We informed you that we were not renewing the Master Supply Agreement. We only discussed the possibility of entering into a new Master Supply Agreement; however, there is no Master Supply Agreement in effect at this time. If you believe there is an agreement in effect, what are the terms and why do you believe it's in effect?"

26.     On November 20, 2015, Ross responded to Gharabegian's November 12, 2015 letter, in pertinent part, as follows:

    a.     "You are incorrect in stating that the Master Supply Agreement (MSA) is no longer in effect. Section 1 of the Master Supply Agreement clearly states that the MSA "will automatically renew for successive one (1) year terms", which it did upon expiration of the Initial Term. Your claim that you informed CORT that Seller was not renewing the MSA is irrelevant, as Seller does not have any right to terminate the MSA by electing not to renew. Therefore, the MSA remains in force and effect and CORT expects Seller to abide by all of

8

**FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN**

its terms and conditions. CORT will continue to honor its obligations under the MSA."

  b. "Seller's claim that the MSA is no longer in effect constitutes anticipatory repudiation of the MSA. As a result, CORT has the right to file suit immediately to enforce Seller's required performance under the MSA. CORT is evaluating this option now and will proceed with a lawsuit if you fail to affirm the effectiveness and binding nature of the MSA within five days of the date of this letter. We look forward to your prompt response."

### Trademark and Copyright Infringement

27. Since approximately 2005, Lounge 22 (and, now, Eleven23) continuously used the highly distinctive trademark LOUNGE 22® mark to market and sell its furniture throughout the United States and the world.

28. Lounge 22 and Eleven23 have devoted substantial time, effort, and resources to the development and extensive promotion of the LOUNGE 22® mark and the products offered thereunder. As a result of Plaintiff's efforts, the public has come to recognize and rely upon the LOUNGE 22® mark as an indication of the high quality associated with Eleven23's furniture.

29. On April 24, 2007, the United States Patent & Trademark Office ("PTO") issued to Lounge 22 U.S. Trademark Registration No. 3,233,908 for the mark LOUNGE 22® in connection with "[f]urniture retail store services; second hand furniture resale dealership services; general consumer merchandise retail store services," "[c]ontract furniture services, namely, custom installation of furniture," and "[c]ontract furniture services, namely, custom fabrication of furniture."

30. The LOUNGE 22® registration is in full force and effect on the PTO's Principal Register, and gives rise to presumptions in favor of Eleven23 with respect to validity, ownership, and exclusive rights to use the LOUNGE 22® mark throughout the United States.

31. As a result of Plaintiff's long-term and widespread use of the LOUNGE 22® mark in the United States and throughout the world the LOUNGE 22® mark enjoys a high degree of consumer recognition and has become a famous mark.

32. CORT owns and operates the web page located at http://www.cortevents.com/LOUNGE 22®/, wherein it indicates "Made in the U.S., this unique luxury collection is now offered nationwide. LOUNGE 22® Powered by CORT means you get

9

**FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN**

sophisticated modern designs and a guarantee of reliable 24/7/365 professional delivery from the most trusted event furniture rental company in the nation." (emphasis added.) That web page also includes the LOUNGE 22® logo.

33. CORT owns and operates the web page located at http://www.cortevents.com/collections/LOUNGE 22®. CORT is wrongfully using the LOUNGE 22® trademark and logo on that website.

34. CORT owns and operates the web page located at https://www.cort.com/event-rental, wherein it indicates "Only CORT Events offers exclusive brands developed specifically for the event rental industry including the flexible Endless collection, sophisticated **Lounge 22**, brilliant Luna Lighting, revolutionary Napoleon collection, and the unique Elements décor line." (emphasis added.)

35. Defendants do not have the right to use the LOUNGE 22® trademark or any variations thereof in connection with the manufacture, marketing, or sale of any products or services.

36. On information and belief, Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Plaintiff's mark.

37. The furniture that Defendants are marketing and selling are offered through the same channels of distribution and to the same target customers as Plaintiff's LOUNGE 22® furniture.

38. Plaintiff sent a demand letter to CORT informing CORT of Plaintiff's valuable trademark rights and demanding that they cease all use of the LOUNGE 22® trademark and infringing on Eleven23's copyrights.

39. As of the filing of this First Amended Complaint, Plaintiffs are informed and believe that Defendants continue to use the LOUNGE 22® trademark, and confusingly similar variations of the LOUNGE 22® trademark, without authorization. Defendants' failure to comply with Plaintiff's demands demonstrates a deliberate intent to continue wrongfully competing with Plaintiff and to willfully infringe Plaintiff's rights in the LOUNGE 22® trademark.

/ / /

/ / /

/ / /

## FIRST CAUSE OF ACTION

**(Declaratory Relief – by Eleven23 against CORT and DOES 1-50)**

40. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth herein.

41. Eleven23 brings this cause of action for declaratory relief, seeking a declaration that the MSA did not automatically renew and is not currently in effect.

42. An actual controversy has arisen and now exists between Eleven23 and CORT regarding their respective rights under the MSA. In particular, CORT claims that the MSA automatically renewed and is in effect. On the other hand, Eleven23 does not believe that the MSA automatically renewed or that it is in effect.

43. A judicial declaration is necessary and appropriate at this time to determine the respective rights of Eleven23 and CORT under the MSA and the APA.

44. Thus, Gharabegian seeks a judicial declaration that the MSA did not automatically renew and is not currently in effect.

## SECOND CAUSE OF ACTION

**(Breach of Contract – by Eleven23 against CORT and DOES 1-50)**

45. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth herein.

46. Eleven23 and CORT entered into the MSA, as detailed above.

47. Eleven23 has either fully performed or has been excused from performance of all its obligations under the MSA.

48. Pursuant to the MSA, "CORT agrees to purchase the Products exclusively from Seller, and CORT will not enter into any agreement for the manufacture of the Products by any other supplier or manufacturer."

49. CORT breached the MSA by having Eleven23 design certain furniture, but having that furniture manufactured by companies other than Eleven23.

50. As a direct and proximate result of CORT's breach of contract, Eleven23 has suffered, and continues to suffer damages, in an amount according to proof, but believed to be not

11

FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN

less than $1 million.

## THIRD CAUSE OF ACTION

### (Declaratory Relief – by Gharabegian against CORT and DOES 51-100)

51. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth herein.

52. Gharabegian brings this cause of action for declaratory relief, seeking a declaration that he is not bound by any non-competition or non-solicitation agreements with CORT.

53. An actual controversy has arisen and now exists between Gharabegian and CORT regarding their respective rights under the MSA. In particular, Gharabegian is informed and believes that CORT's position is that Gharabegian is bound by the Non-Competition Agreement. On the other hand, Gharabegian does not believe that the Non-Competition Agreement automatically renewed or that it is in effect.

54. A judicial declaration is necessary and appropriate at this time to determine the respective rights of Gharabegian and CORT under the Non-Competition Agreement, MSA and the APA.

55. Thus, Gharabegian seeks a judicial declaration that the Non-Competition Agreement did not automatically renew and is not currently in effect.

## FOURTH CAUSE OF ACTION

### (Trademark Infringement – by Eleven23 against CORT and DOES 1-50)

56. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth herein.

57. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the LOUNGE 22® trademark, and confusingly similar variations thereof, in commerce to advertise, promote, market, and sell or rent their products throughout the United States, including California, constitute trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a).

58. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things,

diminution in the value of and goodwill associated with the LOUNGE 22® mark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

59. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover damages in an amount to be determined at trial, profits made by Defendants on the sales (including, rental sales) of LOUNGE 22® furniture, and the costs of this action. Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FIFTH CAUSE OF ACTION

**(Trademark Dilution – by Eleven23 against CORT and DOES 1-50)**

60. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth herein.

61. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the famous LOUNGE 22® trademark, and confusingly similar variations thereof, in commerce to advertise, market, and sell/rent furniture products throughout the United States including California, are likely to cause dilution by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

62. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the LOUNGE 22® mark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. 1125(c).

63. On information and belief, the actions of Defendants described above were and continue to be deliberate and willful. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of certain furniture, and the costs of this action pursuant to 15 U.S.C. § 1117.

///
///

13
FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN

## SIXTH CAUSE OF ACTION

**(Unfair Competition and False Advertising under California Business and Professions Code §§ 17200 and 17500 *et seq.* – by Eleven23 against CORT and DOES 1-50)**

64. ~~Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth herein.~~

65. Defendants' actions described above and specifically, without limitation, Defendants' use of the LOUNGE 22® trademark, and confusingly similar variations thereof, in commerce to advertise, market, rent, and sell furniture products throughout the United States and California constitutes trademark infringement, false advertising, and unfair competition in violation of the laws of the State of California.

66. By these actions, Defendants have engaged in false advertising and unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq.*, and, as a result, Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill.

67. As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

### On Eleven23's First Cause of Action for Declaratory Relief

1. For a judicial declaration that the MSA did not automatically renew;

2. For a judicial declaration that the MSA is not currently in effect and Eleven23 is not bound by the MSA;

### On Eleven23's Second Cause of Action for Breach of Contract

3. General and special damages in an amount according to proof;

4. Incidental and consequential damages in an amount according to proof;

///

**On Gharabegian's Third Cause of Action for Declaratory Relief**

5. For a judicial declaration that Gharabegian is not bound by the Non-Competition Agreement;

6. ~~For a judicial declaration that Gharabegian is not bound by any non-competition or non-solicitation agreement with CORT;~~

**On Eleven23's Fourth, Fifth and Sixth Causes of Action**

7. That Plaintiff be granted injunctive relief under 15 U.S.C. § 1051 *et seq.*; California Business and Professions Code §§ 17200 and 17500 *et seq.*; and federal law and California common law of contributory trademark infringement and vicarious trademark infringement; specifically, that Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from:

    a. using the LOUNGE 22® mark, or any mark confusingly similar to the LOUNGE 22® mark, in connection with the marketing, promotion, advertising, sale, renting, or distribution of any furniture products or services;

    b. directly or indirectly engaging in false advertising or promotions of furniture;

    c. making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation or distribution of furniture by making false representations regarding Plaintiff's foreign language software products;

    d. That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

8. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading descriptions or representations of fact that misrepresent the nature, quality and characteristics of Plaintiff's furniture designs;

9. That Plaintiff be awarded Defendants' profits derived by reason of said acts, or as determined by said accounting;

15
FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN

1  10. That such damages and profits be trebled and awarded to Plaintiff and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

11. That Defendants be adjudged to unlawfully and unfairly compete against Plaintiff under the laws of the State of California, Cal. Bus. & Prof. Code § 17200, *et seq.*;

12. That Defendants be adjudged to have competed unlawfully and unfairly against Plaintiff by engaging in false or misleading advertising under the laws of the State of California, Cal. Bus. & Prof. Code § 17500, *et seq.*;

13. That Plaintiff be awarded damages in an amount sufficient to compensate it for the damage caused by Defendants' unfair competition and false advertising under California Business and Professions Code §§ 17200 and 17500 *et seq.* and contributory trademark infringement and vicarious trademark infringement under federal law and California common law;

### On All Causes of Action

14. Attorney fees and costs permitted by law; and

15. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all issues so triable.

Dated: December 11, 2015                LAW OFFICES OF RICHARD M. FOSTER

By: _/s/ Richard M. Foster_
Richard M. Foster

Attorneys for Plaintiffs
Eleven23 Marketing, LLC and Armen Gharabegian

FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to the within cause. I am employed in Los Angeles County, California. My business address is 5429 Cahuenga Boulevard, North Hollywood, California 91601.

On the date indicated below, I served the following document(s): **SUMMONS ON FIRST AMENDED COMPLAINT; FIRST AMENDED COMPLAINT OF ELEVEN23 MARKETING, LLC AND ARMEN GHARABEGIAN**, on the following person(s):

Michael Davis
CORT Business Services Corporation
3455 W Sunset Rd Ste A
Las Vegas, NV 89118

Debbie Lansford
CORT Business Services Corporation
11250 Waples Mill Rd Ste 500
Fairfax, VA 22030

G. Kirk Domescik
Duane Morris LLP
1180 W. Peachtree St Ste 700
Atlanta, GA 30309

☒ **BY UNITED STATES MAIL.** I enclosed the foregoing document(s) in a sealed envelope, with postage thereon fully prepaid, addressed to the person(s) specified above and placed the envelope for collection and mailing following this firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, on the same day correspondence is placed for collection and mailing, it is deposited with the United States Postal Service in the ordinary course of business.

☐ **BY OVERNIGHT DELIVERY.** I enclosed the foregoing document(s) in a sealed envelope or package designated by the overnight delivery carrier, with delivery fees paid or provided for, and addressed to the person(s) specified above. I deposited the envelope or package in a box or other facility regularly maintained by the overnight delivery carrier.

☐ **BY ELECTRONIC TRANSMISSION.** I transmitted the foregoing document(s) to the person(s) specified above electronically. Electronic service was made from margarit@rmflaw.com.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 14, 2015

_____
Margarit Movsesian